Elizabeth Jacoby, Respondent, v. J. E. O'Hearn, Appellant.

Kansas City Court of Appeals, December 10, 1888.

1. **Money Had and Received**: ACTION FOR, WHEN MAINTAINABLE. Whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged, by the ties of natural justice and equity, to refund, the action for money had and received may be maintained.

2. **Practice**: AFFIRMANCE: CASE ADJUDGED. Where the demurrer to the evidence was properly overruled (as it was here), and the instructions given fairly presented the respective theories of the parties, and the judgment is for the right party (as here), this court will affirm the judgment.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

The case is stated in the opinion.

*Davis & Wingfield,* for the appellant.

(1) The court erred in giving plaintiff's instruction number one. (*a*) Because there was no evidence to sustain it. (*b*) Because it entirely ignored the evidence of Henry Jacoby, plaintiff's witness, which was to the effect that plaintiff could only get her pay for board upon orders signed by Igo. (2) The court erred in refusing defendant's first instruction, because there was no evidence in the case to sustain plaintiff's claim, or tending to prove said claim.

*Boyd & Sebree,* for the respondent.

(1) In this case there was a complete novation. The boarders owed the respondent; they agreed with her that the board-bills should be paid her by O'Hearn, the

appellant, with whom they would leave sufficient of their wages, which he would owe them, to pay their board-bills; the appellant O'Hearn owed the men their wages, more than the amount of their board-bills. The men left with him the amount of their board-bills with respondent, O'Hearn retaining the same out of their wages which he owed them. He thereby, if not expressly, impliedly agreed with the men to apply this money of theirs retained by him on their board-bills, and plaintiff has the right to recover the same from him. *Sterling v. Ryan*, 37 N. W. Rep. 572; *Impl. Co. v. Jackson*, 66 Wis. 42; *Schuster v. Railroad*, 60 Mo. 290; *Bull v. Brockaway*, 48 Mich. 523; *Gibson v. Railroad*, 7 Mo. App. 586; s. c., 76 Mo. 549; *Utley v. Tolfree*, 77 Mo. 307; *Rogers v. Gosnell*, 58 Mo. 589. (2) Even if there were no evidence in the case that defendant owed the men working under Igo, the custom of chief contractors reserving the right to pay the laborers their wages, so as to prevent liens being filed against the railroads, is so universal and unvarying that the court would take judicial notice of it. But in this case it is not necessary to invoke that rule, as all the evidence shows that O'Hearn was responsible to the men for their wages; that he was paymaster, and that he retained the men's money under an understanding with them that he would pay their board-bills. (3) The fact that the men told young Jacoby to get orders from Igo on appellant can make no difference in this case. The agreement was that they would leave money with O'Hearn to pay plaintiff her board-bills; they did leave the money with him. He knew how much the board-bills were, and agreed to pay the money on the board-bills. The fact that plaintiff was not able to get orders from Igo, whether because he had left the country, or any other reason, does not change the fact that O'Hearn held the money under an agreement with the men to pay their board-bills with it. He could not discharge his obligation to plaintiff, either by paying or crediting the money to the wrong person. Plaintiff is the only one that he had the right to pay the money to,

and if he has credited Igo with the amount that cannot affect plaintiff's rights. Furthermore, the evidence shows that O'Hearn has never paid the money to anybody. He has simply credited the amount on Igo's account, and this being a credit to which Igo is not entitled, he could not claim it. O'Hearn still holds the money, and he cannot pay Igo's debt to him with money which belongs to plaintiff.

RAMSAY, J.—This suit was begun in one of the justice's courts of Saline county upon a statement of the cause of action, as follows:    "The plaintiff states that in the month of November, 1887, she was keeping a boarding-house, and that the following named persons boarded with her and the amount of their board-bills with her in said month were sums set opposite their respective names, to-wit:    Charles Williams, $3.50; F. Murphy, $4.35; J. Beck, $9.25; J. W. Huff, $3.35; M. W. Blue, $6.00; F. Harrison, $9.65; H. Demmick, $11.80.    That each of said persons agreed with plaintiff at the time he began boarding with her that their several board-bills should be paid by the defendant, they being at the time employes of defendant, and that said board-bills should be paid plaintiff on the twentieth day of December, 1887, when their wages for that month, November, became due; that afterwards the defendant assented to said agreement, and agreed to pay plaintiff said several amounts, and retain the said amounts from the respective amounts due each of said employes, and thereby the defendant became discharged from paying each of the said employes his wages to the amount of each of their said board-bills, and became bound to pay the same to plaintiff; that the said amount became due plaintiff from the defendant on the twentieth day of December, 1887, and although demanded of defendant on that day he refused to pay the same, and the same remains unpaid.    Wherefore plaintiff says that by reason of the premises, the defendant owes her forty-seven dollars and ninety cents, and for which she asks judgment.    And plaintiff for another count and state-

ment of her cause of action, states that on or about the twentieth day of December, 1887, the following named persons were indebted to her for board, furnished them in the month of November, 1887, in the amounts set opposite their respective names, to-wit: Charles Williams, $3.50; F. Murphy, $4.35; J. Beck, $9.25; J. W. Huff, $3.35; M. W. Blue, $6.00; F. Harrison, $9.65; H. Demmick, $11.80, and had been so indebted since December 1, 1887; that on or about the twentieth day of December, 1887, the defendant was indebted to each of said persons, so indebted to plaintiff in a sum as great, or more, than each of the respective parties was indebted to plaintiff as aforesaid; that defendant agreed with each of said persons so indebted to plaintiff to pay his said debt to plaintiff, and thereby became discharged from the debt to each of said parties, to the amount of his indebtedness to plaintiff, and became bound to pay plaintiff the whole amount of said board-bills, which was forty-seven dollars and ninety cents, which sum and all of said bills plaintiff demanded of said defendant on or about the twentieth day of December, 1887, when it became due, but which he refused and still refuses to pay. Wherefore plaintiff says that by reason of the premises the defendant owes her forty-seven dollars and ninety cents, and for which she asks judgment. And plaintiff for another statement of her cause of action says that the defendant is indebted to her in the sum of forty-seven dollars and ninety cents, for money had and received for her use and benefit, and which became due and payable December 20, 1887, and which was demanded of defendant on said day, but which remains unpaid, and for which plaintiff asks judgment." The case was appealed to the circuit court of Saline county, where it was tried *de novo.* Plaintiff's evidence showed that she had boarded the parties mentioned in the statement, to the respective amounts alleged under the agreement or understanding between plaintiff and said parties that plaintiff would have to get an order from one Igo on the defendant O'Hearn, and that defendant would pay

for said board.   It appears that the defendant was a
contractor in charge of certain works consisting of the
construction of a railroad, that Igo was a subcontractor
under him, and that parties named in plaintiff's state-
ment were hands employed by Igo in the work.   The
evidence further showed that it was the custom for Igo
to make out orders on O'Hearn or time-checks for his
hands, which orders or time checks O'Hearn would
recognize and pay, and in this manner became pay-
master to the hands working under Igo.   These orders
or time-checks were in the following form :   "Time-
check—Nov. 22, 1887.—J. Beck has worked sixteen
days and 7-10 at ($1.50) one dollar and fifty cents per
day to amount, ($25.05) twenty-five dollars and five
cents.   Board, $9.25 ; amount due, $15.80."   The evi-
dence of Frank Harrison, one of the parties who
boarded with plaintiff, shows that checks similar to the
one quoted were made out by Igo, for the month ending
December 20, 1887.   He testified :   "My board-bill
was put on the time-check by Igo, and defendant
reserved it out of my wages.   The board-bill reserved
was due Mrs. Jacoby.   *   *   *   The other boarders
gave their board-bills to Mr. Igo.   Mr. Igo gave me
orders on Mr. O'Hearn and Mr. O'Hearn paid me all
they called for except the board-bill, which was noted
on time-check."   It is shown beyond question that the
plaintiff furnished the board mentioned in her state-
ment and that defendant reserved it out of the wages
he paid to the hands for the month in question.   In
defendant's evidence he says :   "I kept the names of
the men in my book because I was responsible to them
for their wages less the amount of their board-bills.   I
supposing that they had boarded with Igo, credited his
account with me for the several sums."   We are at a
loss to see how the defendant can appropriate these
board-bills as credits on his debit account to Igo.   Had
Igo in fact paid for such board, or had he boarded the
hands at his own expense, then as this part of the
account would have been due from O'Hearn to Igo, we
can see that defendant might have properly charged the

same on some account due from Igo to defendant. But such was not the fact, the parties working for Igo who boarded with plaintiff earned so much money. Under the evidence it is shown that defendant was their paymaster. They presented Igo's time-checks to defendant and he subtracted and retained the amount of their board, and paid to them the balance of their wages. Under the agreement of these parties the money retained by defendant was due to plaintiff. We do not think it can be maintained that defendant, owing to a belief upon his part that the amount of these board-bills was due to Igo, could reap the benefit of such amount in the adjustment of his account with Igo, and deprive the parties, to whom it was in fact due, of it. "Whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged, by the ties of natural justice and equity, to refund, the action for money had and received may be maintained." *Mo. Pac. R. R. v. McLiney, ante,* p. 166. It may be added that it was shown that Igo left the country shortly before December 20, 1887, and that plaintiff procured no formal order from him on defendant for the board-money.

The court properly overruled defendant's demurrer to plaintiff's evidence, and the instructions given fairly presented the respective theories of the parties. The appellant not having favored us with the citation of authorities, we have given the cause the best consideration we could, and believing the judgment was for the right party, it is affirmed. All concur.